UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA BOONE O'BRIEN,

                Plaintiff,                Case No. 4:18-cv-10396
                                              District Judge Linda V. Parker
v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 20), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 22) and AFFIRM THE
COMMISSIONER'S DECISION**

I.      **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 20), **GRANT** Defendant's motion for summary judgment (DE 22),

and **AFFIRM** the Commissioner's decision.

II.      **REPORT**

      Plaintiff, Debra Boone O'Brien, brings this action under 42 U.S.C. §§

405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for disability insurance (DI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 20), the

Commissioner's cross-motion for summary judgment (DE 22), Plaintiff's reply

(DE 23) and the administrative record (DE 15).

### A.   Background and Administrative History

Plaintiff filed an application for DI benefits on May 17, 2012, alleging a

disability onset date of October 16, 2002. (R. at 116-124.)[1]  In her disability report,

she lists Bipolar 2, depression, anxiety, panic attacks, degenerative disc disease,

and osteopenia as limiting her ability to work.  (R. at 140.)  Her application was

initially denied on August 14, 2012.  (R. at 66-72.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"),

which was held on August 20, 2013. (R. at 30-65, 79-80.)  Thereafter, on October

---

[1] Plaintiff states that she amended her onset date to June 3, 2007, when she would
be 52 years old.  (DE 20 at 5.)  In the October 5, 2017 ALJ decision on review, the
ALJ recognized that Plaintiff has claimed "a variety of amended onset dates"
throughout the administrative proceedings (including June 3, 2007 and June 30,
2007), and that because Plaintiff was unable to obtain records from 2007, she
asked the ALJ to consider the periods of 1999 to 2004 and 2011 to 2013 (when she
did have medical records) and extrapolate from those records what her condition
was in 2007.  (R. at 736.)  The ALJ found "it appropriate to consider all the
medical evidence available" and "consider[] whether the record establishes
disability at any point since the alleged onset date of October 16, 2002 and prior to
the date last insured of June 30, 2007, with consideration given to all evidence and
to the claimant's transition from one age category to another during that period."
(R. at 736-37.) The ALJ properly noted that because there are no exertional
limitations caused by a medical impairment, Plaintiff's age category would not
direct a different outcome under the applicable medical-vocational guidelines.  (R.
at 736; *see also id.* at 838-39.)

24, 2013, ALJ Anthony R. Smereka issued an opinion which determined that Plaintiff was not disabled under the Social Security Act from October 16, 2002 through the date last insured (DLI), June 30, 2007. (R. at 16-29.)  In that opinion, the ALJ considered Plaintiff's records from 1999 through 2004, noted that there was no evidence of treatment from September 2004 through Plaintiff's DLI of June 30, 2007, and refused to consider Plaintiff's medical records of treatment in 2012 and 2013 because "they do not provide illumination on the period in question."  (R. at 24.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 891-92.)  However, on April 22, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Smereka's decision became the Commissioner's final decision.

On November 17, 2016, in an appeal to this Court, Case No. 15-12200, Judge Ludington adopted the report and recommendation of Magistrate Judge Stafford and remanded Plaintiff's action for the ALJ to "clarify which evidence in the record is considered relevant and to explain the basis for that conclusion, to scrutinize the consistency between the claimant's testimony and the objective medical findings, and to consider the correct age and age group of the claimant." (R. at 736, citing R. at 825-40; R. at 841-44.)  The Appeals Council then remanded

this matter to an ALJ for further proceedings consistent with the order of the Court. (R. at 847.)

On August 24, 2017, ALJ Smereka held a new hearing, at which Plaintiff and a vocational expert (VE), Michele D. Robb, testified.  (R. at 763-806.)  On October 2, 2017, ALJ Smereka issued an opinion, which again determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 733-62.)  The Appeals Council subsequently denied Plaintiff's request for review, and thus ALJ Smereka's October 2, 2017 decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 1, 2018.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 800 pages of medical records, which were available to the ALJ at the time of his October 2, 2017 decision.  (R. at 175-732, 970-1213  [Exhibits 1F-11F and 12F-13F, respectively].) The record contains treatment records from May 1999 through September 2004 and from 2010 through 2013.  However, there is a gap in the medical records from September 2004 to July 2010, which includes the period of claimed disability. (*Id.*)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

4

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of October 16, 2002 through her DLI of June 30, 2007. (R. at 739.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder with anxiety and substance abuse. (*Id*. at 739-40.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 740-42.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that, through the DLI, based on all of the impairments, including the substance use disorder, that Plaintiff had the RFC:

> . . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: no hazards, including work at unprotected heights or around dangerous moving machinery and no climbing of any ladders, ropes, or scaffolds; no driving in the course of employment; restricted to, but had the ability to do, unskilled work, meaning work that needs little or no judgment to do simple, routine, repetitive tasks that can be learned on the job in a short period of time; no work with the general public; no more than occasional contact with coworkers and supervisors; no fast production pace work where the

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

pace is set by others; and the claimant would have recurrent work
absences.

(*Id.* at 742-48.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work through the DLI.  (*Id.* at 748-49.)  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC based on all of the

impairments, including the substance use disorder, the ALJ determined that there

were no jobs that exist in significant numbers in the national economy that Plaintiff

could perform through June 30, 2007, the DLI.  (*Id.* at 749-50.)

ALJ Smereka then continued his analysis, and determined that if Plaintiff

stopped the substance use, she would have, through the DLI, the RFC:

> . . . to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: no hazards, including work at
> unprotected heights or around dangerous moving machinery and no
> climbing of any ladders, ropes, or scaffolds; no driving in the course of
> employment; restricted to, but had the ability to do, unskilled work,
> meaning work that needs little or no judgment to do simple, routine,
> repetitive tasks that can be learned on the job in a short period of time;
> no work with the general public; no more than occasional contact with
> coworkers and supervisors; and no fast production pace work where the
> pace is set by others.

(*Id.* at 751-55.)  This RFC is essentially identical to the prior RFC above, but does

not include the limitation that "the claimant would have recurrent work absences."

(*Compare* R. at 753 *with* R. at 751.)  The ALJ then found that while Plaintiff

would have continued to be unable to perform her past relevant work, through her

DLI, if she stopped the substance use, there would have been a significant number

6

of jobs in the national economy that Plaintiff could have performed, including laundry worker and inspector.  (R. at 756.)  He therefore determined that the substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not have been disabled within the meaning of the Social Security Act at any time from the alleged onset date through June 30, 2007, the DLI, if she stopped the substance use.  (*Id.*)

### D.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

E.    **Analysis**

1.    **Plaintiff's Failure to Comply with LR 7.1 and My Practice Guidelines**

8

Plaintiff's brief did not conform to either the Local Rules or my practice guidelines.  Local Rule 7.1(d)(2) mandates, in relevant part, that "[a] brief supporting a motion or response must, at the beginning, contain a concise statement of the issues presented...."  Similarly, my Practice Guidelines for Social Security cases stress the need for a separate "Issues Presented" page.  Specifically, my Practice Guidelines contain the following directions for Social Security motions:

> All motions and briefs must comply with Local Rule 7.1. The parties are particularly reminded of the requirement that all briefs must include an "Issues Presented" page. On that page, the parties shall outline the issues to be presented in their briefing. In the case of a motion for summary judgment or remand, the "Issues Presented" must indicate the error allegedly committed by the Administrative Law Judge, i.e., the bases for the appeal and grounds for reversal. Within the parties' briefs, the issues presented should be labeled as section headings, and should match the items listed on the "Issues Presented" page. Any issue addressed in the brief that is not both 1) included in Issues Presented and 2) labeled as a section heading within the brief, will not be considered by the Court.

Here, there is no "Issues Presented" page outlining the issues to be presented.  Nor are the issues labeled as section headings within the brief.  Instead there is only one heading in the "Argument" section of Plaintiff's motion broadly stating that "The ALJ Made Factual Errors in His Decision Regarding Facts He Considered in Making the Decision."  (DE 20 at 20.)  As such, it is very difficult to discern the elements of the ALJ's opinion Plaintiff is challenging, and the "arguments" offered by Plaintiff within that section are unfocused and hard to

9

follow.  In order to not penalize Plaintiff for her counsel's nonconforming motion, I will leniently examine the issues presented in the Argument section of Plaintiff's motion; however, counsel is forewarned not to expect such leniency from the Court in future cases.

### 2.    Consideration of Plaintiff's Alcohol Use

"An individual shall not be considered to be disabled … if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  "The Commissioner's regulations explains that '[t]he key factor' in determining whether drug or alcohol abuse is material in a given case is whether the claimant would still be disabled if he or she stopped using drugs or alcohol."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2014) (quoting 20 C.F.R. § 404.1535).  If the ALJ determines that the claimant would still be disabled if the substance abuse stopped, the ALJ must conclude that the substance abuse is not a contributing factor material to the determination of disability and should award benefits. *Blaylock v. Comm'r of Soc. Sec.*, 947 F.Supp.2d 826, 839 (N.D. Ohio 2013) (citing 20 C.F.R. §§ 404.1535(b)(2)(ii) and 416.935(b)(2)(ii)).  If the ALJ finds that the claimant would not be disabled if the substance abuse stopped, the ALJ must conclude that the substance abuse is a contributing factor material to the determination of disability and should not award benefits.  *Id.* (citing 20 C.F.R. §§

10

404.1535(b)(2)(i) and 416.935(b)(2)(i)). "In practice … an ALJ [may] look at a claimant's periods of sobriety and compare those periods to times when the claimant was abusing substances, in order to make this evaluation." *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 443 (6th Cir. 2011) (citing *Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004) (approving of the ALJ's approach of "look[ing] to periods of sobriety in the record to determine whether [the claimant] suffers from a work-limiting mental illness independent of substance abuse")). Alternatively, when a period of sobriety or abstinence is absent, an ALJ may rely upon "the opinion of an acceptable medical source … regarding materiality as long as the acceptable medical source provides support for their opinion." Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *9 (Mar. 22, 2013). The claimant bears the burden of proving that substance abuse is not a contributing factor material to his or her disability, that is, that the claimant would still be disabled in the absence of substance abuse. *Id.* at *4.

### 3.  The ALJ complied with the Court's 2016 remand order and his decision is supported by substantial evidence

This Court's 2016 remand order stated that "[t]he ALJ's [2013] decision is unclear as to how the medical evidence he considered impacted his decision and why he excluded consideration of [the 2012 and 2013] medical evidence" and thus remanded this matter "for reconsideration of [Plaintiff's] credibility" to "clarify

what evidence [the ALJ] finds relevant and explain the basis for that conclusion."

(R. at 831, 834.)

### a. Social Security Ruling 16-3p

The ALJ's decision postdates SSR 16-3p, applicable to decisions made on or

after March 28, 2016, which eliminates use of the term "credibility" from official

policy and clarifies that a "subjective symptom evaluation is not an examination of

an individual's character." SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017)

(amended notice); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369,

2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p,

"an ALJ must focus on the consistency of an individual's statements about the

intensity, persistence and limiting effects of symptoms, rather than credibility"),

*report and recommendation adopted by* 2018 WL 494523 (S.D. Ohio Jan. 22,

2018). However, "[d]espite the linguistic clarification, courts continue to rely on

pre-SSR 16-3p authority providing that the ALJ's credibility determinations are

given great weight." *Combs v. Comm'r of Soc. Sec.*, No. 18-10930, 2019 WL

1503143, at *3 (E.D. Mich. Jan. 29, 2019) (collecting cases), *report and*

*recommendation adopted by* 2019 WL 1253423 (E.D. Mich. Mar. 19, 2019); *Altyg*

*v. Berryhill*, No. 16-11736, 2017 WL 4969353, at *3 (E.D. Mich. July 31, 2017)

("SSR 16-3p does not change the precedent establishing that the ALJ is entitled to

great deference in his credibility determination, given his responsibility to observe

12

and assess [plaintiff's] demeanor and credibility."), *report and recommendation adopted by* 2017 WL 4296604 (E.D. Mich. Sept. 28, 2017).

In making his RFC determination, the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limits an individual's ability to perform work-related activities…." SSR 16-3p, 2017 WL 5180304, at *3.

### b. The ALJ's decision is supported by substantial evidence

The record contains treatment records from four hospitalizations/day treatment programs from May 1999 through September 2004 and treatment records from 2010 through 2013. However, there are no treatment records from September 2004 through June 30, 2007, Plaintiff's DLI, and Plaintiff's representative admits that she did not seek medical care during that time period. (R. at 318, 746, 768.) In fact, there is a gap in the medical records from September 2004 to July 2010, which includes the period of claimed disability. Plaintiff claims that she did

receive treatment from a psychiatrist in North Carolina via Webcam from 2008 to 2011, but that she was unable to obtain a copy of any records of that treatment.  (R. at 743, 768.)

To be eligible for disability insurance benefits, a person must become disabled *during* the period in which he or she has met the statutory special earnings requirements.  42 U.S.C. §§ 416(i)(2)(c); 423(a), (c), (d); 20 C.F.R § 404.130.  "If a claimant is no longer insured for disability benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured."  *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002).  Accordingly, Plaintiff must demonstrate that she became disabled before June 30, 2007.  Acknowledging that there are no medical records near her DLI, Plaintiff's counsel requested that the ALJ "extrapolate" from the medical records predating and postdating Plaintiff's DLI to determine what her condition was in 2007.  That is what the ALJ did.

On remand, ALJ Smereka found that Plaintiff was "credible concerning some symptoms and limitations" but that her "statements concerning the intensity, persistence and limiting effect of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 744, 752.)  The ALJ acknowledged Plaintiff's hearing testimony, her treatment for mental health impairments including alcohol abuse,

14

Case 4:18-cv-10396-LVP-APP   ECF No. 24, PageID.1384   Filed 08/16/19   Page 15 of 28

and specifically including treatment records during the 1999 through 2004 *and* 2011 through 2013 time periods, her mental health symptoms, her use of medication, and her daily activities. (R. at 742-55.) He thoroughly reviewed Plaintiff's hospitalizations and treatment in May 1999, September 1999, April 2000 and September 2004, noted the absence of mental health records from after 2004 through June 30, 2007, the DLI, and then detailed Plaintiff's mental health treatment from February 2012 and later, and reviewed the opinion evidence. (R. at 744-48, 752-55.) The ALJ found it significant that Plaintiff's psychiatric hospitalizations and inpatient treatments in May 1999, September 1999, April 2000 and September 2004 took place at times when she was engaging in alcohol abuse, and that these hospitalizations would have caused "recurrent work absences" that would have been work-preclusive, but that she required no such treatment when she was sober from approximately late 2000 until September 2004, that her subsequent treatment when she cut back on and eventually stopped drinking was significantly more limited (and in fact required no hospitalizations), and that her records from 2012 and later, when she reports she was sober, demonstrate improvement in her mental status examinations. (R. at 745-46, 748, 754-55.) Thus, the ALJ properly "look[ed] at [Plaintiff's] periods of sobriety and compare[d] those periods to times when [Plaintiff] was abusing substances, in order to make his evaluation." *See Monateri*, 436 F. App'x at 443.

Plaintiff challenges contentions: (1) that she "was drinking continuously between 1999 and 2004[;]" and, (2) that "[s]he received any mental health treatment between 1999 and 2004 other than [t]he three inpatient mental health admissions after suicide attempts." (DE 20 at 21.) However, the ALJ made no such statements. The ALJ cited Plaintiff's testimony admitting that she was drinking during the 1999 to 2000 time period, that drinking was a factor in two out of three of her past suicide attempts, and that she was sober from 2000 until she attempted suicide in September 2004, where she admitted that she had been drinking excessively in the twenty-four hours prior to the attempt. (R. at 743-44, 773, 782-84.) The ALJ noted that this period of sobriety from approximately late 2000 to September 2004, "corresponds directly to the period during which [Plaintiff] did not require any inpatient treatment." (R. at 746.) Moreover, while Plaintiff does not remember talking with her treating psychiatrist about drinking prior to September 2004, her April 2000 treatment records note Plaintiff's admission to a "sudden burst of drinking" when depressed and that "there is a history of both alcoholism and mood disorder in her family" (R. at 275-76), and her September 2004 treatment notes stated, "The patient has a history of drinking. At one time, she was drinking quite excessively; however, she has been sober for the last four years until the night before admission where she drank excessively and had blackout spells and fell." (R. at 219; *see also id.* at 1009 ("The consumer

16

stated she would drink a lot of alcohol when she was married about [sic] years ago; it was how she dealt with her problems.").)  The ALJ found that, in light of the hospitalizations in 1999, 2000 and 2004, "it is reasonable to assume that the effects of alcohol on [Plaintiff's] bipolar disorder would have led to recurrent work absences," which would have precluded substantial gainful employment.  (R. at 748-50.)

The ALJ recognized that Plaintiff testified she significantly reduced her drinking when she lived in North Carolina in the 2005 to 2009 time period, and that the absence of any hospitalizations during this time period "offers additional evidence that her periods of limited functioning and need for extended inpatient care were related to her use of alcohol and its effects on her condition."  (R. at 746, 786.)  He then reviewed Plaintiff's mental health treatment records from 2012 and later,[3] when Plaintiff stated that she was sober, and noted improvement in her mental status examinations; specifically that she "nearly always had appropriate attention and concentration, and she did not show thought slowing or other abnormalities she had shown while drinking prior to September 2004."  (R. at 746, citing R. at 315, 324, 331, 348, 352, 366, 433, 450, 469, 505, 525, 553.)

---

[3] Following the DLI of June 30, 2007, the earliest records are from 2010 and 2011 (R. at 175-205), but those records pertain to physical complaints, not mental impairments and alcohol abuse, and Plaintiff presents no argument regarding any physical impairment.

Although Plaintiff does not challenge the ALJ's finding that substance abuse was a severe impairment (R. at 739), she asserts that Dr. Vaziri, who treated her during her 1999-2004 hospitalizations, did not formally diagnose her with a substance abuse disorder during that time period.  (DE 20 at 23.)  That is true. However, this is a case where the ALJ is tasked with reviewing Plaintiff's records from 1999 through 2004 and 2012 to 2013, and extrapolating from those records whether Plaintiff was disabled as of June 30, 2007 because there are no records from October 2004 through 2010.  Dr. Vaziri did note that drinking exacerbated Plaintiff's mental impairments in April 2000 (R. at 270, 275-76), and in September 2004 (R. at 219, 223).  There are no treatment records from after September 2004 through 2010, and Plaintiff's treatment records from 2012 and later – a time period when Plaintiff claims she was sober – do consistently contain a diagnosis of "alcohol abuse, active." (*See, e.g.,* R. at 315, 327, 334, 341, 355, 369, 376, 436, 453, 458, 472, 482, 508, 525, 556, 559, 974, 1001, 1009, 1016, 1023, 1032, 1041, 1058, 1062, 1066, 1070, 1082, 1085, 1092, 1099, 1106, 1113, 1210.)  The ALJ weighed the record evidence and assessed Plaintiff's mental status and functioning during that period of time Plaintiff claims she was sober – 2012 and 2013 – and concluded that, unlike the period of time prior to September 2004 when Plaintiff admits she was drinking, Plaintiff would no longer have recurrent work absences if she were not drinking, although she would continue to require multiple additional

18

nonexertional limitations in her RFC.  (R. at 755.)  All told, there is sufficient

record evidence that Plaintiff suffers from alcohol abuse. *See Black v. Comm'r of*

*Soc. Sec.*, No. 3:14-cv-292, 2016 WL 425045, at *4 (S.D. Ohio Feb. 4, 2016)

("Because the record contains evidence that Plaintiff suffers from alcoholism, and

because the ALJ found that Plaintiff has disabling limitations, the ALJ

appropriately considered whether Plaintiff's 'alcoholism is a contributing factor

material to the determination of a disability.'"), *report and recommendation*

*adopted by* 2016 WL 743443 (S.D. Ohio Feb. 23, 2016); *see also Young v.*

*Comm'r of Soc. Sec.*, 214 F.Supp.3d 987, 993 (D. Or. 2016) ("The record is replete

with references to Plaintiff's alcoholism and provides ample 'medical evidence of

drug addiction or alcoholism' that supports the ALJ's finding of a substance use

disorder and the ALJ's decision to conduct a materiality analysis.").  Plaintiff

improperly invites the Court to re-weigh the record evidence, which it cannot do.

*See Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982)

(per curiam) ("Our task is not to reweigh the evidence.  That is solely the province

of the [agency].") (citation omitted).

In sum, the ALJ expressly considered all of the record evidence in reaching

his decision, as directed on remand, determined that alcohol abuse was a

contributing factor material to the determination of disability, and concluded that:

> Overall,  the  objective  evidence  does  not  support  the  claimant's
> allegations  regarding  the  severity  of  symptomatology  or  functional

limitation. I acknowledge that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, objective medical evidence, and nonmedical evidence. Therefore, the claimant's statements and all other relevant evidence have been carefully considered and the factors in 20 CFR 404.1529(c)(3) have been applied even though they are not all discussed specifically herein. Nevertheless, review of the record as a whole reveals inconsistences that do not support the claimant's subjective allegations. As one notable example, as indicated above, the claimant's treating history is not consistent with the assumption that her alcohol use did not impact the severity of her symptoms. The claimant had hospitalizations in 1999, 2000, and September 2004, and in September 2004, she reported that she had attempted suicide after drinking for 24 hours and that she had relapsed after four years of sobriety and drank heavily before that, placing her periods of alcohol abuse in 2004 and in late 2000 and earlier. The claimant's subsequent treatment, when she cut back on and eventually stopped drinking, was significantly more limited. She had no further hospitalizations. The combination of reports from her, her representative, and her provider in North Carolina who had no records from the date last insured or earlier suggest she did not receive significant mental health treatment for the first two years she was in North Carolina. Her ability to go without treatment and to not experience the sort of severe exacerbations that had led to hospitalizations during times when she was drinking suggests substantial improvement in her condition with the absence of excessive alcohol use, although she did have some ongoing depression.

(R. at 754.)

As this Court has previously recognized, "'the claimant continues to have the burden of proving disability throughout the DAA materiality analysis,'" and thus Plaintiff bears the burden to "demonstrate how h[er] substance abuse is not a material contributing factor or how [s]he would still be disabled if h[er] substance abuse ceased." *Ampy v. Comm'r of Soc. Sec.*, No. 2:14-cv-13547, at *6 (E.D.

Mich. Jan. 14, 2016) (quoting SSR 13-2P, 2013 WL 621536 (Feb. 20, 2013)),

*report and recommendation adopted at* 2016 WL 1106983 (E.D. Mich. Mar. 22,

2016). Plaintiff has failed to meet that burden and I find that the ALJ's analysis is

supported by substantial evidence.

### 4. The ALJ properly evaluated the opinion evidence

Plaintiff also appears to lodge a broad challenge to the ALJ's evaluation of

the May 2013 joint opinion of her treating family medicine physicians, Dr. M.

Krishnashastry and Dr. N. Hemady, and the August 2013 medical source statement

completed by Cindy Stader, LMSW, Plaintiff's case worker at Community Service

Network, in that he afforded those opinions "little weight." (DE 20 at 26-28; R. at

746-47, 754-55.)[4] However, Plaintiff fails to demonstrate any error in the ALJ's

consideration of this opinion evidence.

---

[4] Plaintiff also includes a statement that the "GAF numbers barely budge from
1999 to 2013" and that ALJ gave those scores "only some weight." (DE 20 at 27.)
Without any further development, this argument is waived. *See McPherson v.
Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory
manner, unaccompanied by some effort at developed argumentation, are deemed
waived."). In any event, the ALJ expressly recognized Plaintiff's GAF scores in
the record and assigned them "some" weight, finding that Plaintiff "has greater
functional capacity than otherwise suggested by these scores." (R. at 747.) The
ALJ was not bound by these scores, could just as easily assigned them "no"
weight, yet provided good reasons for the weight he did assign them, including that
they "were not accompanied by explanations as to the particular basis for the
scores or the functional limitations expected and considering the variation between
GAF scores generally from one provider to another, these scores are of limited
utility in assessing general functioning." (R. at 747-48, 755.) *See DeBoard v.
Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) ("[T]he Commissioner

### a.   Drs. Krishnashastry and Hemady

The ALJ correctly noted that Drs. Krishnashastry and Hemady first

examined Plaintiff on December 10, 2012, *more than five years after* the DLI, and

that they therefore offered little insight into Plaintiff's functional capacity when

drinking prior to the DLI.  (R. at 746-47, citing R. at 384.)  The ALJ found that the

doctors' May 2013 joint opinion lacked support in the treatment notes and was

internally inconsistent because it "simultaneously indicated that [Plaintiff] had no

physical limitations [which is consistent with the ALJ's finding that Plaintiff has

not shown evidence of a physical impairment that imposes more than minimal

functional limitations] and then set forth a variety of [such] limitations."  (R. at

747, citing 384-85, 388-419; *id.* at 755.)  He further noted that while Drs.

Krishnashastry and Hemady indicated that Plaintiff would have limitations in

sustaining concentration and social interaction, these doctors "did not treat

[Plaintiff's] mental illness personally and did not report significant deficits in

mental or psychological functioning during their encounters with [Plaintiff]."  (R.

at 747, 755, citing R. at 386, 388-419.)

---

has declined to endorse the [Global Assessment Functioning] score for use in the
Social Security and [Supplemental Security Income] disability programs, and has
indicated that [Global Assessment Functioning] scores have no direct correlation to
the severity requirements of the mental disorders listings.") (citations and internal
quotation marks omitted).

Plaintiff does not appear to contend that the ALJ violated the treating physician rule in evaluating the doctors' May 2013 opinion, but instead only complains, incorrectly, that the ALJ found that the doctors "did not treat her personally." (DE 20 at 27.) However, the ALJ plainly did not make that finding. Rather, the ALJ found that the doctors did not treat Plaintiff's *mental illness* personally, but rather treated her physical impairments, and that they did not report any significant deficits in mental or psychological functioning during their encounters with Plaintiff. (R. at 747, 755, citing 386, 388-419.) Accordingly, Plaintiff's challenge to the ALJ's evaluation of Drs. Krishnashastry's and Hemady's May 2013 joint opinion fails.

### b.    Ms. Stader

The ALJ evaluated the August 2013 opinion of Plaintiff's case worker, Ms. Stader, and gave it little weight. He noted that Ms. Stader's contact with Plaintiff occurred years after Plaintiff's DLI, and that she therefore offered little insight into Plaintiff's functional capacity when drinking prior to the DLI. (*Id.* at 746-47, citing R. at 380-82.) He further found that Ms. Stader's findings of marked or extreme limitations in nearly all areas about which she was questioned is not supported by the "largely normal mental status examinations throughout the records from [Plaintiff's] treating providers during the period Ms. Stader was in contact with [Plaintiff]." (R. at 753-55, citing R. at 323-24, 331, 336, 346-47, 352,

23

359, 366, 380-81, 433, 469, 505, 553, 972-73, 988-89, 999-1000, 1005-06, 1030, 1048-49, 1064-65, 1071-73, 1103.)  In addition, the ALJ noted that "mini-mental state examinations" conducted by Plaintiff's primary care provider revealed that Plaintiff scored well within the range representing only mild impairment.  (R. at 753, citing R. at 1154, 1174.)

Plaintiff broadly complains that the ALJ "disagree[d] with the conclusions" of Ms. Stader.  (DE 20 at 26.)  However, under the regulations in effect at the time of the ALJ's decision, a therapist or social worker such as Ms. Stader is not properly classified as an "acceptable medical source" (generally licensed physicians and psychologists) but rather as an "other source."  *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Englebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513(d)); *see also Pellow v. Astrue*, No. 09-11587, 2010 WL 1626396, at *4 (E.D. Mich. Mar. 31, 2010) ("the opinion of Plaintiff's therapist ..., a Licensed Master Social Worker, is not entitled to controlling weight[,]"), *report and recommendation adopted by* 2010 WL 1626394 (E.D. Mich. Apr. 21, 2010). An "other source" may provide probative evidence but is due no special deference, and the Social Security regulations in effect at that time require only that information from "other sources" be "considered." *See Erbland v. Comm'r of Soc. Sec.*, No. 1:13-CV-93, 2015 WL 5578020, at *3 (W.D. Mich. Sept. 22, 2015) (citing 20 C.F.R. §§ 404.1513,

416.913 (effective Sept. 3, 2013 – Mar. 26, 2017)). This is not a demanding standard and was easily met here. Plaintiff has failed to demonstrate any error in the ALJ's evaluation of Ms. Stader's opinion.

### c.   The ALJ was not required to rely on any particular opinion in formulating the RFC

Finally, to the extent Plaintiff broadly contends that the ALJ erred because he did not rely on any specific physician's opinion in formulating his RFC, that argument has been squarely rejected by the Sixth Circuit. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) (rejecting the argument that "the ALJ's RFC lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence")). Those courts explain that "[a]n RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard*, 705 F. App'x at 442. "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-

25

medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). "[T]o require the ALJ to base her RFC on a physician's opinion would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Rudd*, 531 F. App'x at 728; *see also Colbert v. Comm'r of Soc. Sec.*, No. 2:15-cv-13467, 2017 WL 1214187, at *7 (E.D. Mich. Feb. 10, 2017) (rejecting plaintiff's argument that the ALJ's RFC is improper because the record is "'devoid' of the opinions of any physicians" upon which to base the RFC because the ALJ properly examined the record evidence and determined plaintiff's capacity), *report and recommendation adopted by* 2017 WL 1018149 (E.D. Mich. Mar. 16, 2017).

Thus, the ALJ was not required to conform his RFC assessment to a particular medical opinion. Rather, a review of the ALJ's decision demonstrates that he sufficiently "'articulate[d] how the evidence in the record supports the RFC determination, discuss[ed] the claimant's ability to perform sustained work-related activities, and explain[ed] the resolution of any inconsistencies in the record.'" *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

F.   **Conclusion**

In sum, the ALJ's opinion is supported by substantial evidence and is based upon a proper application of law. Accordingly, it is **RECOMMENDED** that the

Court **DENY** Plaintiff's motion for summary judgment (DE 20), **GRANT**

Defendant's motion for summary judgment (DE 22), and **AFFIRM** the

Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 16, 2019                    s/*Anthony P. Patti*
                                          Anthony P. Patti
                                          UNITED STATES MAGISTRATE JUDGE